We will hear argument next in number 24-1281, Randy Luna v. Tug Hill Operating. We will hear first from the appellant, whenever you're ready. Good morning. May it please the Court, my name is Christian Ankoviak. I'm here with my co-counsel, Aaron McLaughlin, representing Tug Hill, the appellee. It wasn't all that long ago that Mr. Birch and I shared the privilege of arguing the Rogers case in front of you, Judge Harrison, a different panel, but before this Court. I think the outcome of that case casts somewhat of a shadow over the arguments we intend to make here today. So for that reason, I just want to shine a light on two critical points and certainly take any questions that you all might have. The first of those points is this, and Judge Harris, you may recall this. The arbitration agreement that was at issue in Rogers that led to the decision in that case that's relied upon so heavily by the District Court was a decidedly bilateral agreement. Many of those provisions which led to the conclusion in that case that the parties did not intend for Tug Hill, my client, to be an intended third-party beneficiary, were because those provisions were squarely between what was then the contracting party, Rogers, and rig up the staffing company. I think the agreement here is significantly different. Aside from the fact that Griffin is the contracting party with the Texan, which is a single-member LLC by Randy Luna, if you look at the agreement itself, and it appears on page 31 of the joint appendix, you can go through that. There are numerous provisions significantly different from Rogers that explain, for example, the parties. So can I just, sorry, so you're talking about the third-party beneficiary issue and why Rogers is different on that score? Correct. Okay, but can I, I think the first thing the District Court held was that Mr. Luna himself is not personally bound by this contract anyway. So even if you could enforce it as a third-party beneficiary, you couldn't enforce it against him. And your position in your brief is that there are no words in this contract indicating that Luna was signing on behalf of the Texan or in a representative capacity. But that's what the contract says, that they have entered this agreement to be executed, caused this agreement to be executed by their duly authorized representatives. So I found your brief sort of confusing on this point, and how is it not clear that Mr. Luna signed as a duly authorized representative, as the contract says? I think there is no question that the agreement that was signed says just that. However, that is one piece. So that's a change in position since you're, okay. Well, there is a line in the agreement that says that the parties are signing. As representatives. As representatives. There's no question. That's a big deal. That is a big deal. But when you look at the agreement as a whole, which I think the District Court was required to do but did not, it simply looked at that statement. It did not look at the agreement as a whole. So let's assume there's a little bit of argument that you could make that it looks in some of the covenants like it might pertain to an individual. But it's got a number of places where it's saying it's being signed on behalf of. I mean, what's legally wrong if the agreement says that with coming to that conclusion? Is the fact that if you kind of scour through the agreement and you see something that might be a little inconsistent with that, that you can, as a matter of law, look at those express provisions? Well, as I look at the agreement, I think the agreement is ambiguous. Wait, can I? So, I'm sorry. If I were asked to sign this contract as an agent, your view is that even though, like, good news, I'm not personally liable. It says right above my signature. I'm executing this as a duly authorized representative. It would also be on me to go through the contract like, oh, hang on. It says he over there, not entity. So maybe actually I am personally liable. That seems like you're asking a lot of signatories to these agreements. Well, I think, Your Honor, as I read the agreement as a whole, the agreement to me, my interpretation, is that it was drafted for an individual to sign. I think the confusion when Randy Luna inserts the Texan into the contractor agreement is that it creates an ambiguous document that requires the court to look at it as a whole and to decide. What is ambiguous about calling the contractor the Texan LLC and then saying that the company and contractor have caused this agreement to be executed? Nobody else. And the contractor is defined in the contract, the first line of the first paragraph, as the Texan. So where's the ambiguity? I think the ambiguity arises, Your Honor, because if you look at the provisions of the agreement, there are numerous provisions that would not apply to a corporate entity. Doesn't that just mean sometimes the contract is signed by an individual and sometimes by an entity, and it's a formed contract. They don't want to do a different one each time. Well, I think that's potentially the case, but a better drafted document would clearly delineate those issues and indicate when somebody is signing on behalf of, for example, an entity, but giving rights to that entity's individuals under the FLSA or other provisions. Don't you have a different argument? And maybe it's not for us today, but it seems kind of odd that Mr. Luna could say, I'm going to operate as an LLC as it relates to Griffin, and then get paid by Griffin. He didn't get paid by Tug Hill directly, and then bring the case as an individual. That's what seems odd to me. It looks like he wants the benefit tax or whatever of being an LLC, but he brings the case not as the Texan, but as himself individually. So that seems to me to be, and I'm not even sure an LLC can bring up one of these cases. I've looked into that. It looks debatable. So it seems like there's a foundational issue maybe with the case, but that's not before us. The case is you're wanting us to interpret the agreement a certain way. I think what Judge Harris and Judge King say seem pretty persuasive. You could almost use that maybe in another argument, but it seems to me like we're kind of in the argument that's avoiding the heart of this whole agreement. I think the issue is, and you make a great point in that regard, but in order for me to enforce the arbitration provision against the individual who seemingly does want to take two bites at the apple, wants the protections of the LLC, but appears to have held himself out as an individual signing this agreement. We also have the alter ego argument, which we haven't touched on. Well, you waived that, didn't you? By not raising it in timely fashion in the district court? I don't believe we did, Your Honor. Okay. When did you raise it in the district court? We raised it. In your reply brief? We argued generally that he was signing in his individual capacity in the principal brief, and when. Right, but the word's alter ego. When did you? We did not use the word. That is a discrete concept in the law. Do you agree? I understand. We did not use the words alter ego until the reply brief. However. It's not just a distinct concept. It's a cause of action. It's what you do to get relief, and it requires evidence. I mean, alter ego, you are disregarding the corporate form. I mean, I think there's a good waiver or forfeiture argument, but it seems to me even bigger than that, that it's a claim that must be alleged in the complaint. And to my knowledge, you never alleged that. You just made an argument in the reply brief below. Well, there is no vehicle for us to allege alter ego. It was not our complaint. We were simply moving to dismiss. And so as we look at the agreement and made an attempt to compel arbitration, we argued in the first instance that this individual had an intent to be bound individually to the terms of this agreement. When that was objected to by the other side, we went deeper and explained the basis for that argument. We explained that we thought not only was he signing in his individual capacity, but that there was an argument to be made that he's an alter ego. Yeah, but you didn't put in any evidence on that, and it's an intensely fact-specific inquiry. And if you didn't put in any evidence, I don't know why you're saying now we should remand for discovery. You didn't ask for discovery. You had to bring in some evidence, attach it. You know, in this kind of a proceeding, the judge can go beyond the complaint and look at what the parties submit. And then if there's a disputed issue of fact, the judge has a trial. But you didn't ask for any of that. Well, Your Honor, we thought that the evidence that the court should take judicial notice of was sufficient. What was that? To raise that issue. That he's the only member of the LLC? That he disregarded the courted form. That's not enough to. I'm sorry. What's your evidence that he disregarded corporate formalities? It's in the joint appendix. It shows that the LLC had lapsed. He also, if you look at the registration, he used his home address. He was the single member of the LLC by all accounts, taken with the fact that the agreement itself is replete with references that only an individual could exercise certain rights. It appears to us in totality that he was executing that on his own behalf. I thought under, isn't there stuff about whether someone is capitalized right, whether they have insurance? I thought that was even the standard you were citing. I mean, did you put in any evidence on capitalization or insurance? We did not, Your Honor. And frankly, the assumption was that after looking at the briefing, the court would need to take evidence on that issue, if that was an issue the court needed to reach. I mean, I don't think that's how it works under the trial provision under this statute. I think that the parties have to kind of create an issue. I think we've said, like, you're basically applying the summary judgment standard. So there needs to be, you put in evidence, you show a disputed issue of fact, and then the judge has to have a trial. But none of that happened here. The issues and evidence that we pointed to, Your Honor, we thought was sufficient. It was concerning to us that the court didn't even take up that argument, and the court did not hold that we waived that argument. I think the distinction between waiver and forfeiture is an important one. Waiver is intentional relinquishment of a known right. Forfeiture, that court has the authority to take up that argument under DeSimone, which we cited in our brief. It's the standard that we look at. As I understand your argument, it's that the district court should have considered alter ego. And is the standard by which we review that abuse of discretion? I believe it's DeNovo. I think you have DeNovo review on that issue. Okay. As a matter of law, why was the district court required to, I guess, like have a trial on or order discovery, although I really don't think that happens in these arbitration cases. I think, again, the parties just put the evidence out there. But as a matter of law, the district court erred in not having some kind of a fact finding on your alter ego theory. Is that right? I think that's correct, Your Honor. I think they didn't address it at all. They didn't even say that the information we did provide was sufficient. My best guess is that the district court had no idea that you were asking for a trial on anything. I mean, you never said, here's the evidence. We have a disputed issue of fact now. Have a trial. That's the way it's supposed to go under Section 4. Well, I think the district court, in looking at what we presented, could have ruled in our favor. I don't think that it. Based on the fact that he's the only member of the LLC, that's enough to show. And that there were other indicia. That's a different question. The other indicia in the. . . You think the contract bears on the alter ego theory, that because of the way the contract is written, that's an. . . I think the fact that he's a single-member LLC, that he used his home address, that he did not keep up the corporate. . . Wait, I'm sorry. Used his home address? Isn't that just like his contact information? No, that was in the registration. So a single-member LLC has to go get a separate business location? No, I don't think that's necessary. I think when you look at it in the totality, the fact that the LLC was formed shortly before the engagement with Griffin and Tug Hill, and after that appears to have been abandoned for all intents and purposes. Is there any. . . I mean, we may be spending a lot of time on this, but I'm just not aware of Maryland law or, quite frankly, any law I've ever heard of on Pearson, the corporate veil, that would say the fact that you formed an LLC before you undertook a business enterprise somehow suggests it's an alter ego. I would think that actually is what happens all the time when you're seeking liability protections and things like that. It seems like when you look at alter ego, you look at is he observing formalities? Are there books? Are there minutes? Are there stuff like that? Do they have meetings? Is it capitalized? Is there insurance? Those are the things that I think universally you look to at alter ego, and it seems like you're talking about things that are outside of the normal elements. Well, I think those are certainly factors, Your Honor. I guess, and I recognize that my time is up, but our understanding was that if Judge Bailey wanted to explore that issue further, Judge Bailey is not shy. I would have expected him to ask us to present evidence on that issue to explore that further. But independent of that, we have argued that there are grounds to bind Mr. Luna in his individual capacity to this. We've raised that in various ways in our brief, and I understand my time is up. So I will cede the floor to Mr. Burch. Thank you.  Good morning, and may it please the Court. My name is Rex Burch, and I represent Randy Luna. Just as it did in Rogers, the folks at Tug Hill have no contract with Mr. Luna. They nonetheless want to force him to arbitrate with Tug Hill. So the folks at Tug Hill told Judge Bailey, Randy Luna has a contract with Griffin, and we, Tug Hill, are entitled to enforce that agreement. There's just two problems with that. Randy Luna doesn't have a contract with Griffin. Griffin has a contract with a company called the Texan LLC. Second, Tug Hill isn't entitled to enforce that agreement, and certainly isn't entitled to use it to force Mr. Luna to arbitrate with Tug Hill. On appeal, essentially, the folks at Tug Hill want to add another issue, alter ego. But Tug Hill waived that issue before the district court by failing to raise it until their reply brief. The district court refused to consider it, and in this circuit, a district court is entitled to refuse to consider an issue that is raised in a reply brief. That's Ridpath v. Board of Governors, 447 F. 3rd, 292 at 305. Because the claim of alter ego was not properly raised in the district court, it is not properly before this court. This court should, therefore, affirm the denial of Tug Hill's motions. Let's start with Tug Hill's first problem. Why isn't Mr. Luna bound by the contract between the folks at Griffin and the Texan LLC? That's because, as Judge Keenan noted in talking to my friend, on page one, paragraph one, the contract defines who the parties are. Company is defined as Griffin. Contractor is defined as the Texan LLC. Under Texas law, which everybody agrees is the law that applies to this case, the court must apply these terms as they are defined in the contract. Moreover, both Tug Hill and Griffin conceded that the Texan LLC, not Mr. Luna, entered into the agreement with Griffin. Tug Hill told Judge Bailey, and I'm quoting, the limited liability company that plaintiff created, the Texan LLC, is the contractor identified in the agreement, end quote. That's at page ID 51, note one. Tug Hill also submitted a declaration from Griffin's executive vice president where he admitted Mr. Luna signed on behalf of a limited liability company that he created, the Texan LLC. That's at joint appendix 29 at paragraph seven. To the extent my friend is right and there is any ambiguity in this contract, and I do not agree that there is, but if there is any ambiguity in the contract, the only evidence in the record from both Tug Hill and Griffin is that this is an agreement between Griffin and the Texan LLC. Counsel. Yes, sir. I may be interested in the arguments that are made. I'm also interested sometimes in arguments that weren't. I take your points on the issues you framed, but it does seem odd to me that you are the Texan as it relates to Griffin. You're the Texan when you get paid by Griffin, and you're suing Tug Hill individually. You could certainly answer that's not before us. You'll deal with it at the right time. I also think there's some law that questions whether an LLC could bring this type of case to begin with, whether it even is permissible legally, the case against Tug Hill, that is. Do you have a problem, maybe that's not before us now, in operating with Griffin as an LLC and then bringing a case against Tug Hill as an individual? No, because those are two different relationships. The Texan has a contract with Griffin. One of the people sent out by the Texan was Mr. Luna. No, it was the Texan. Okay, it was sent out by the Texan. Yes, the Texan sent out Mr. Luna. Then the folks at Tug Hill are alleged to have injured Mr. Luna as an individual. They're alleged to have denied him wages, proper wages, individually in his capacity. The plaintiff down below is not the Texan. Do you have authority that supports your ability to do that? Sure. Okay, all right. We'll deal with it maybe at the right time. You think, okay. Yes, absolutely. Because the beef in the lawsuit down below is between Mr. Luna as an individual and the folks at Tug Hill, right? Well, that's the beef you claim exists.  My question is, do you get to use your LLC clothes when you like them and take them off when you don't like them? Well, it's obviously a different issue, right? I understand that we're doing that. I will say this. There are cases, there's a Tenth Circuit case, the name escapes me, I can tell you it's in the home health care or the janitorial industry, where the folks had individual LLCs directly with the person that they were working for. It would be the equivalent of, I have an LLC, I've contracted with Griffin, I nonetheless sue Griffin as an individual, Griffin, not Tug Hill, not some third party, but Tug Hill or Griffin directly. I sued them directly. The court said, look, in the context of an FLSA claim, which is a federal right given to individuals, you can do that. You can have an LLC relationship directly with your alleged employer and you can nonetheless bring a claim under the FLSA. There are a number of cases where people have had relationships where they have personally denied that they are employees of a company. Nonetheless, the Supreme Court in the Alamo case said, because of the importance of this statute, we sometimes have to apply it even when people would affirmatively deny its benefits. Here, I think the situation is quite different because we have a contractual relationship between the Texan and Griffin. Texan sends out Mr. Luna. They could have sent out somebody else. It could have been any one of their workers. If the folks at Tug Hill had shot him in the head, his estate would still have a claim against Tug Hill. It is functionally no different to me. I appreciate your answer. That's a lot and I don't want to take up time from the issues before us anymore. It's fair. In the right case, maybe we'll have to talk about this again. Maybe in this case. I think for the reasons that I've already explained, that should be the end of it. The folks at Tug Hill, if nothing else, they do not lack for daring do when it comes to trying to enforce somebody else's agreement. According to Tug Hill, Mr. Luna expressly agreed to become a party in the contract in his individual capacity. Where is that express agreement? To me, the best they can say is you'd have to infer it. For example, Tug Hill says the word buy doesn't appear next to Mr. Luna's signature on the signature lines. However, right above his signature, the agreement states, Company and contractor have caused this agreement to be duly executed by their duly authorized representatives. That's at Joint Appendix 45. Mr. Luna's signature also appears directly below the word contractor, which is defined as the Texan LLC. I'd like to just mention that Texas courts have long held that a signatory will not be held personally liable when the body of the contract indicates that the signature was in a representative capacity. It is the rule that where the body of the contract purports to be a contract of the corporation, the signature of an officer with or without an affix designating his representative capacity does not render it his personal contract. That's the Plan B case cited in my brief as well as my friend's. Judge Quattlebaum, you brought up the restatement of agency earlier this morning. Texas... Restatement of torts, but... You did, but I guessed the restatements. I'm sorry. Yes, I. The Texas law, we recognize it as persuasive. We don't consider it binding, but it is nonetheless persuasive. At restatement second of agency 157, they specifically address an instrument which shows agency in one part. It says that if there is one part of the contract where it is clear that the agent is acting in a representative capacity, the fact that it is not equally clear in other parts is immaterial. It is not necessary that he should constantly appear throughout the agreement to act only as a representative. Tug Hill, nonetheless, says the agreement is replete with references to he when referring to contractor. Let's go back again to page one of the agreement. The agreement itself says, when referring to contractor, that it could be he, her, or its. That's because this is a form contract, because they apparently did use it with both individuals and companies. But it tells us on page one that we're not going to play the pronoun game. If it's obvious you are referring to contractor, that's who we are referring to. As Tug Hill admitted to Judge Bailey, the Texan LLC is the contractor identified in the agreement. Tug Hill also argues . . . Counsel, if I could. I take it's your position that if you prevail on whether the agreement is an agreement with the LLC over the individual, you don't need to get to the . . . And I guess on the alter ego issue, you don't need to get to the third-party beneficiary question. Is that the case in terms of logic? Absolutely. Because they've got to show both ends. Right. If we get there to the third-party beneficiary agreement, it does seem that this agreement is not identical to the agreement in Rogers. There's references to clients. Tug Hill is a client. Why isn't that enough to be an intended third-party beneficiary? So Texas law . . . I want to say you went to law school in South Carolina, but I'm guessing about that. Is there something about the way I've asked questions that suggests that's where I went to law school? No, but I know South Carolina . . . There's a Fourth Circuit case called Waukesha, I believe it's called, versus Knight Enterprises where they talk about South Carolina law. It's a similar situation like this. The question is not what has to be arbitrated, but who must arbitrate. And in that case, they mention that South Carolina law also has, in order to be a third-party beneficiary, it has to be directly for the third-party's benefit. Texas has similar language, but we're even stronger about it. It's not enough under our law that the third-party could benefit even directly. The contract has to show on its face that it was intended directly for their benefit. So short of language that says that, what can satisfy that standard, other than express language that says, we intend this to benefit the customers of Griffin? The language that the Texas Supreme Court used in Brumet was, it has to be clearly, fully, and unequivocally expressed that the parties intend to give Tug Hill the right to be able to sue on the contract. How do you do it other than those exact words? Because I thought they also said you don't have to use those exact words. We don't have a magic words test. So how do you do it without using the magic words? Well, you say, hey, by the way, without saying you are a third-party beneficiary, you say, you are agreeing to arbitrate with the folks at Tug Hill, and Tug Hill can require you to do so. None of the legalese. So if Tug Hill is not a third-party beneficiary, I don't think you dispute this. The Texan, at least, agreed in this contract to arbitrate any cover claims it might have against Tug Hill. If Tug Hill can't enforce that, is it a non-enforceable promise? Who could enforce that if not Tug Hill? The folks at Griffin. Why would they do that? So I'm glad you asked that because in the contract they say if you have a beef, if Texan LLC has a beef with Tug Hill, we want you to sue us. That's in Section 13.7. Say that again. If Texan has a beef with Tug Hill, we want you to sue us, Griffin. We want you to sue us for that problem, not them. They also say in paragraph 20 of the complaint, if you have a beef with one of our employees, if you have a dispute with one of our employees, we want you to sue us, Griffin. We want the Texan LLC to sue Griffin. So to me, the reason that they have this in there is because they want to make sure that when they are having, if the Texan LLC wants to bring a claim against Tug Hill, that they bring it in arbitration. And so it's kind of the wraparound, to me, of the fact that whatever disputes there are between the folks at Griffin and Texan LLC. I'm just looking at 20, and I haven't studied that point. It looks like it's saying sue the contractor as opposed to its employees and directors and stuff like that. Is it saying the contractor in lieu of its customers? My memory of that is that it says if you want to, are you looking at 13F or 20? I was looking at 20. I was trying to get back to 13F, so I'm not there yet. I'm sorry, sir. No, I see what 13F is, I think, the first place you said, right? It is. And it does say, and not the company's customer or client, I see what you're saying. Correct. All right. I think that's probably more direct than 20, but maybe I'm wrong there. Well, 20 has to do with, because also in the arbitration provision, right, it says the employees. I want to hear your answer to Judge Harris's question. I'm sorry to interrupt you. I'm sorry, Judge Harris. Can I go back to your question? Yes, I think so. I think my question was, why isn't this just an unenforceable promise? But your answer is Griffin could and would enforce it. Yes, could. Imagine this. I could have a contract with my employees that says, look, if you go out to do work at Boeing and Boeing injures you in some fashion, I have the right to say to you, you need to go to arbitration with Boeing. I obviously can't bind Boeing, right? But I can bind my employee. I can say to my employee, employee, I am binding you, and if that happens, then I want to be able to force you to do that. That's a potential under this contract, I guess. The more direct thing under this contract to me is just, we've said we want you to bring any claims against these other people against us instead of them, and we want those claims to be in arbitration, and so we are sort of buttoning up all the angles here so that everybody understands that if the Texan and Griffin or the Texan and whomever have a beef, that goes to arbitration. That's kind of my take on it. I want to go back to the third-party beneficiary issue for just a second, or excuse me, the alter ego concept for just a second. Tug Hill knew that the contract was between Griffin and the Texan LLC. They say so in their opening brief to Judge Bailey. They say that the agreement is signed by and that the contractor is the Texan LLC. They never raise the issue of alter ego until the reply. That's at page ID 117 through 119. Under the Ridge Path case from the Fourth Circuit, the judge is not required to address it. It is not an abuse of discretion under this circuit's law for the judge to refuse to consider it, and so there's nothing left to be done. I would also just say that the only evidence that does not show the company was inadequately capitalized, nor does it show he did not carry insurance. Unless there's anything further, thank you all very much. Thank you. On the third-party beneficiary issue, I understand that today Mr. Birch is arguing that magic words aren't required, but I think if you read their brief, that's effectively what they're saying. I think if you look at the district court's decision at JA 71, the district court says, in this case, the agreement between the Texan and Griffin contains no provision stating specifically that it was entered into for the sole benefit of Tug Hill or directly for its benefit. To me, that sounds like magic words. And in this case, if you look at ConocoPhillips, which we cited in our brief and numerous other instances, City of Houston. Can I ask you a question about ConocoPhillips? Because that case seems so bad for you to me. It's talking about a whole line of cases in which the fact that the dispute resolution agreement includes non-signatory vendors or clients within its sweep does not, without more, demonstrate status as an intended third-party beneficiary. And then they go on to find third-party beneficiary status there, but not because they're within the scope of the arbitration agreement. So how is that line of cases not pretty bad for you? Well, it also talks about the fact that there's an indemnification provision. A different kind of indemnification. You think you have the same kind of indemnification provision as the one in ConocoPhillips? I thought they were really different. I thought in ConocoPhillips, I'm going to get this mixed up, but basically the Griffin was indemnifying Tug Hill, the Tug Hill equivalent, for all of their litigation costs. So it made sense to have this arbitration agreement because it would benefit the indemnitor. I'm saying it wrong. I thought the indemnification provision was different, but if you think you have the exact same kind of indemnification provision, I'll look at it again. I think the language is slightly different, obviously. But I think it was meaningfully different. Well, I think it only makes sense that the parties would give Tug Hill, the client, referenced in that Griffin agreement the right to seek indemnification for a claim that would be brought, in this case, by. So your position is not that. The fact that this dispute resolution provision names clients as people against whom the other party has to arbitrate. That's not what you're resting on. You're resting on some indemnification provision somewhere in this contract? I'm looking at the totality of those provisions and concluding. Because it seemed from your brief like your argument was, as long as you were listed as someone against whom the other party has to arbitrate, you are a third-party beneficiary of that arbitration agreement. But that is not your position. I think the position is looking at the totality of those circumstances. What are the other circumstances here? Well, the indemnification provision. Which one? What does it say? I believe it's page JA34. Contractor agrees to defend, indemnify, and hold harmless company, company's clients, and it's their employees, and so on and so forth. So I think what you see in ConocoPhillips and City of Houston is a discussion that it's not magic words. It's more than an incidental benefit. It's a benefit that is direct, something that the parties in this case appear to have intended to benefit the clients, Tug Hill. It looks to me like this, putting to one side the indemnification provision, but in your brief you're arguing from the scope of the arbitration agreement. And the inclusion of clients, that's what describes or that's what defines the scope of the arbitration agreement. But I think that is, and it does show that Tug Hill is likely to be a beneficiary of this agreement, but I always thought you needed more for third-party beneficiary status. Like, if I am going to paint my house and I tell the painter also do the house of my friend Judge Quattlebaum while you're at it, I will pay you double because you're doing two houses, and he messes up and doesn't finish Judge Quattlebaum's house, he can't sue. Can he? Can he sue the painter? I mean, the painter's agreement is with me. He's a beneficiary, but he doesn't have a right to sue, does he? I don't know if he has a right to sue. But the fact that he was within the scope of the agreement I had with the painter and that he is a beneficiary of that agreement by itself doesn't mean he can sue the painter. I mean, I'm acting like this is a real case, but it doesn't. I appreciate your point. I think when we look at ConocoPhillips and the other cases that we cited, the case law appears to give the clients in those cases, the vendors, the clients, the subcontractors, the right to exercise something. In this case, it's the right to compel a party to arbitration. We think that we're a beneficiary of the commitment by Mr. Luna to send matters to arbitration. We think he interacted interchangeably with the entity and intended to sign that agreement knowing that he would go to arbitration. That's what we concluded. And I see that I've reached the balance of my time, so if there's any other questions, I thank you. Thank you very much. We will come down and greet counsel.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Barbara Milano Keenan